IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jennifer Nash,<br><br>        Plaintiff,<br><br>v.<br><br>Advocate Aurora Health, Inc.,<br><br>        Defendant. | Case No. 23 C 1474<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Nash filed this action against her former employer, Defendant Advocate Aurora Health, Inc., alleging violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* In her Second Amended Complaint, Plaintiff raised claims of disability discrimination (Count I), failure to accommodate (Count II), retaliation for requesting reasonable accommodations (Count III), interference with FMLA rights (Count IV), and retaliation for taking FMLA leave (Count V). Defendant answered Count II and moved for dismissal of Counts I, III, IV, and V under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Defendant's motion for partial dismissal [23] is denied.

## BACKGROUND

The following factual allegations are taken from the SAC and treated as true for purposes of resolving a Rule 12(b)(6) motion. Sometime around October 2019, Defendant hired Plaintiff as a clinical certified medical assistant. (SAC ¶ 15, Dkt. No. 22). Her duties included greeting patients, scheduling appointments, answering phone calls, validating patient payments and insurance coverage, taking vital signs and lab samples, performing lab tests, and assisting doctors with diagnoses. (*Id.* ¶ 16). Plaintiff alleges that she is disabled due to a heart condition—

1

dysautonomia with cardioneurogrenic syncope and atrial fibrillation with right sided chronic heart failure—that limits her ability to care for herself, breathe, retain consciousness, and drive automobiles, and she often required the assistance of a driver to get to and from work. (*Id.* ¶¶ 17-19). At some point in time, Defendant gave Plaintiff an accommodation that permitted her to work and remain at a sole location because she was unable to drive due to fainting spells. (*Id.* ¶ 24). Regardless of her disability, Plaintiff states that she was "able to perform the essential functions of her job with or without accommodations." (*Id.* ¶ 21).

Around November 2021, Plaintiff took a leave of absence due to a hysterectomy. (*Id.* ¶ 25). She was off for a period of time recovering from the surgery. (*Id.* ¶ 26). When Plaintiff returned to work, a new non-disabled managing supervisor had been assigned to Plaintiff's department. (*Id.* ¶ 27). Plaintiff notified the new supervisor about her disability and continued need for an accommodation of working and remaining at a single location throughout the workday. (*Id.* ¶ 27). In response, Plaintiff claims, this supervisor failed to engage in the interactive process to determine an appropriate accommodation, and instead, denied Plaintiff's request. (*Id.* ¶ 29). Plaintiff was thus required to travel to other locations to work, which allegedly put her at greater risk of experiencing bouts of fainting. (*Id.* ¶ 30). Although Plaintiff continued to ask the new managing supervisor for an accommodation, her subsequent requests were also denied. (*Id.* ¶ 31).

Around spring 2022, Plaintiff was granted FMLA leave to care for her ailing grandmother. (*Id.* ¶¶ 32-33). While she was away, Plaintiff alleges Defendant tried to retract her leave based on the false belief that Plaintiff's grandmother had already died. (*Id.* ¶ 34). Plaintiff later contracted COVID-19 and was approved for her own FMLA leave. (*Id.* ¶¶ 36-37). She alleges Defendant tried to interfere with her FMLA rights when two of its managers, Beth (LNU) and Austin (LNU),

called "MET"[1] acting as Plaintiff's representative to try to obtain her private health information. (*Id.* ¶¶ 37-38). Then, when she returned from leave, Plaintiff claims she was singled out and interrogated regarding "every" workplace issue, regardless of whether or not she was involved. (*Id.* ¶ 40). For example, Plaintiff was grilled with questions over an issue related to a piece of medical equipment that other employees failed to maintain. (*Id.* ¶ 41). Ultimately, around July 2022, Defendant terminated Plaintiff's employment. (*Id.* ¶ 42).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim, courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principals, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Plaintiff asserts that she was terminated because of her disability and retaliated against for exercising her rights under the ADA and FMLA. (SAC ¶ 43-44). Defendant contends that the SAC must be dismissed with prejudice as Plaintiff's claims of disability discrimination,

---

[1] The SAC does not define this term. The Court assumes "MET" refers to a third-party entity that maintains information about Plaintiff's health, such as an insurer.

3

interference with FMLA rights, and retaliation are "insufficiently pled and continue to be nothing more than bare bones legal conclusions." (Def.'s Mot. at 1, Dkt. No. 23).[2] Having considered the pleadings and the arguments of the parties, the Court disagrees.

## I. Disability Discrimination in Violation of the ADA (Count I)

"To bring her disability discrimination claim, [Plaintiff] must sufficiently allege that '(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability.'" *Williams v. Ill. Dep't of Hum. Rts.*, No. 20C2818, 2021 WL 197430, at *2 (N.D. Ill. Jan. 20, 2021) (quoting *Hoppe v. Lewis Univ.*, 692 F.3d 833, 839 (7th Cir. 2012)).

First, Defendant contends that Plaintiff has not sufficiently pled that she is disabled for purposes of the ADA. (Def.'s Mot. at 4-5). "Under the ADA, a disability is 'a physical or mental impairment that substantially limits one or more major life activities.'" *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018) (*quoting* 42 U.S.C. § 12102(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. (*quoting* 42 U.S.C. § 12102(2)). Here, Plaintiff alleges that she has a heart condition that affects her ability to care for herself, breathe, retain consciousness, and drive automobiles. (SAC ¶¶ 17, 19). That is sufficient. *See Baier v. Rohr-Mont Motors, Inc.*, No. 12C8234, 2013 WL 2384269, at *6 (N.D. Ill. May 29, 2013) (denying motion to dismiss where plaintiff alleged a heart condition that limited his ability to lift and work); *Mahran v. Cnty. of Cook*, No. 21C6325, 2023 WL 8004280, at *5 (N.D. Ill. Nov.

---

[2] Defendant filed an Answer denying Plaintiff's claim in Count II of the SAC for failure to accommodate under the ADA. (Dkt. No. 24).

17, 2023) (denying dismissal where plaintiff named specific medical conditions that may amount to disabilities and connected them to affected life activities).

Next, Defendant argues that the SAC is devoid of facts regarding Plaintiff's ability to perform the essential functions of the job with or without an accommodation. (Def.'s Mot. at 5). Plaintiff did state in somewhat conclusory fashion that she meets this requirement. (SAC ¶ 21). However, she also included additional facts in the SAC, such as her position—medical assistant—and job duties—assisting patients and doctors. (SAC ¶¶ 15-16). And, significantly, Plaintiff alleged that prior to her November 2021 medical leave, Defendant had accommodated her need to limit driving to other work locations due to fainting spells caused by her disabling heart condition. (*Id.* ¶ 24). While Plaintiff could have been more specific about certain key dates here—such as when the alleged accommodation began and when it ended—the Court can reasonably infer from the details provided that Plaintiff performed her medical assistant duties with an accommodation until November 2021 and then without an accommodation until July 2022.

Conversely, in the case relied on by Defendant, that plaintiff offered "no facts" whatsoever regarding her ability to perform the essential functions of her job. *Griffin-Thomas v. La Rabida Children's Hosp.*, No. 21C2033, 2022 WL 103705, at *4 (N.D. Ill. Jan. 11, 2022). In fact, plaintiff there did not even identify her position, let alone any essential functions. *Id*. Thus, taking the SAC as a whole here and drawing all reasonable inferences in Plaintiff's favor, the Court finds she has plausibly alleged she was able to perform the essential functions of her job. *See Milsap v. City of Chi.*, No. 16C4202, 2018 WL 488270, at *1, 5 (N.D. Ill. Jan. 19, 2018) (acknowledging that plaintiff offered a threadbare recital of this element of an ADA claim but also alleged facts to suggest he had been performing essential functions of his job first without and later with accommodation).

Last, Defendant argues that Plaintiff has not alleged any causal connection between her disability and an adverse employment action. (Def.'s Mot. at 6). However, Defendant's causation challenge is premature on a Rule 12(b)(6) motion. *See Kelley v. Chi. Transit Auth.*, No. 20C2881, 2021 WL 698482, at *4 (N.D. Ill. Feb. 23, 2021). "The Seventh Circuit has held that the third element of an ADA claim can be properly alleged by stating that the plaintiff suffered an adverse employment action because of their disability." *Id.* (citing *Eiler v. City of Pana*, 606 F. App'x 305, 306 (7th Cir. 2015)). At the pleading stage, Plaintiff meets that minimal requirement by alleging that she was terminated because of her disability. (SAC ¶ 47). Accepting all well-pleaded factual allegations as true, the Court finds Plaintiff sufficiently alleged the required causal connection. *See Eiler*, 606 F. App'x at 306 (finding plaintiff properly stated an ADA claim by alleging she was not hired because of her disability); *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (finding plaintiff stated ADA discrimination claim where he alleged that he could fulfill his job duties but defendant fired him "due to" his alcoholism and his request to accommodate his condition). Accordingly, Count I of the SAC will not be dismissed.

## II.     Retaliation in Violation of the ADA (Count III)

"To state a retaliation claim under the ADA, [Plaintiff] must allege that (1) [s]he engaged in a statutorily protected activity, (2) [s]he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 766 (N.D. Ill. 2020) (citing *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007)). The first two elements are not in dispute. Defendant does, however, contest whether Plaintiff has sufficiently pled that her requests for accommodation were the cause of her termination. (Def.'s Mot. at 7-8). But Defendant's argument unpersuasively relies on several cases that were decided on summary judgment. *See Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 549 (7th

6

Cir. 2008); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000); *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 665 (7th Cir. 2006). As previously discussed *supra*, "alleging a causal link is not required at the pleading stage." *Curtis v. City of Chi.*, No. 16C8042, 2018 WL 1316723, at *5 (N.D. Ill. Mar. 14, 2018); *see also Harris v. Martinez*, No. 22C373, 2023 WL 3504930, at *7 (N.D. Ill. May 17, 2023) ("Without having the benefit of discovery, retaliation plaintiffs often can suffuse their claims with nothing more than allegations of suspicious timing, but this does not render them implausible.") (internal quotations omitted); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014) ("The facts and circumstances of each case necessarily must be evaluated to determine whether an interval is too long to permit a jury to determine rationally that an adverse employment action is linked to an employee's earlier complaint."); *Berman v. Cnty. of Lake*, No. 21C6517, 2023 WL 6388097, at *4-5 (N.D. Ill. Sept. 29, 2023) (finding defendant's argument that "[a] causal link requires more than the mere fact that an employer's action happens after an employee's protected activity" was premature).

 Here, Plaintiff alleges she took a leave of absence for a medical procedure around November 2021, and after she returned, requested that a new managing supervisor approve accommodations that had previously been granted. Those requests were repeatedly denied and around July 2022, Plaintiff was terminated. The SAC is not clear as to how many months elapsed between the protected activity and the adverse action. At most, Plaintiff asserts about an 8-month gap. Nevertheless, drawing all inferences in her favor as the Court must, the facts alleged, along with the temporal proximity, are plausible enough to state a claim for retaliation. *See Harris,* 2023 WL 3504930, at *7 ("[T]he dismissal of retaliation claims at the pleading stage is typically premised on at least a one-year gap between the protected activity and adverse action.").

7

Additionally, Defendant argues Plaintiff's retaliation claim should be dismissed because it is duplicative of her failure to accommodate claim. (Def.'s Mot. at 8). While some facts may overlap between the claims, the Court finds that Plaintiff alleges two separate and distinct theories. *See Winkelman v. Cont'l Nursing & Rehab. Ctr., LLC*, No. 20C2480, 2020 WL 5763813, at *3 n.7 (N.D. Ill. Sept. 28, 2020). The failure to accommodate claim is based on Defendant's failure to engage in the interactive process to determine the appropriate accommodation for Plaintiff's disability and to grant Plaintiff's requests for an accommodation. (SAC ¶¶ 56, 58). On the other hand, the retaliation claim is based on Plaintiff's termination. (*Id.* ¶ 67). Thus, this argument also fails. *See Winkelman*, 2020 WL 5763813, at *3 n.7 (finding plaintiff's claims were not duplicative where plaintiff alleged defendants failed to accommodate her leave of absence and terminated her in retaliation for seeking an accommodation); *Monroe v. Jewel Food Stores, Inc.*, No. 18C1499, 2023 WL 2018907, at *7 (N.D. Ill. Feb. 15, 2023) ("Although two counts might overlap factually, so long as they do not rest on the same substantive foundation, they are not duplicative."). Accordingly, Count III of the SAC will not be dismissed.

### III.  Interference with Rights in Violation of the FMLA (Count IV)

"An employee claiming FMLA interference must show that: (1) [s]he was eligible for FMLA protections; (2) [her] employer was covered by the FMLA; (3) [s]he was entitled to take leave under the FMLA; (4) [s]he provided sufficient notice of h[er] intent to take leave; and (5) [her] employer interfered with, restrained, or denied FMLA benefits to which [s]he was entitled." *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023) (quoting *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022)) (internal quotations omitted). Only the fifth element is in dispute. Defendant argues that Plaintiff pleads herself out of an FMLA interference claim by alleging that she received FMLA benefits. (Def.'s Mot. at 8-9). However, as Plaintiff states in her response,

8

"denial of FMLA benefits is not required to demonstrate an FMLA interference violation." *Ziccarelli,* 35 F.4th at 1089; *see also Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015) ("The implementing regulations make clear that the ways in which an employer may interfere with FMLA benefits are not limited simply to the denial of leave."). Interference or restraint alone is enough to establish a violation. *Ziccarelli,* 35 F.4th at 1089. "[I]nterference can include 'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions.'" *Juday,* 57 F.4th at 595 (quoting 29 C.F.R. § 825.220(c)).

Here, Plaintiff alleges "Defendant attempted to retroactively deny or restrain [her] from utilizing her approved FMLA leave." (SAC ¶ 74). Specifically, while Plaintiff was on approved FMLA leave related to her grandmother's health, Defendant tried to retract the leave based on its false belief that Plaintiff's grandmother had already died. (*Id.* ¶ 34). Plaintiff further alleges that while on approved leave for her own medical condition, Defendant's managers called "MET" acting as Plaintiff's representative in attempt to obtain her private health information in hopes of finding a reason to terminate her. (*Id.* ¶¶ 38-39, 75). Additionally, Plaintiff alleges that she was unfairly singled out by Defendant and interrogated about workplace issues upon her return to work from FMLA leave. (*Id.* ¶ 40).

Based on these facts, it is reasonable to infer that Plaintiff is alleging Defendant did not have a legitimate reason for believing Plaintiff's grandmother had passed away, for attempting to obtain Plaintiff's private health information, or for interrogating Plaintiff about workplace issues. Instead, Defendant was attempting to cut Plaintiff's FMLA leave short and use Plaintiff's taking of FMLA leave as a negative factor in employment actions. Thus, drawing all reasonable inferences in Plaintiff's favor and assuming all well-plead allegations as true, Plaintiff has

adequately stated a claim for FMLA interference. *See Nair v. Winning Wheels, Inc.*, No. 17C50266, 2019 WL 764047, at *4 (N.D. Ill. Feb. 21, 2019) (denying motion to dismiss FMLA interference claim where plaintiff alleged defendant did not follow standard investigation procedures and colluded to fabricate a reason for plaintiff's termination).

Defendant also argues that Plaintiff's FMLA interference claim fails because Plaintiff was not prejudiced by any interference. (Def.'s Mot. at 9-10). But "[t]he elements of an interference claim . . . do not include prejudice." *Hulet v. Informis Health Sols., LLC*, No. 16C2778, 2017 WL 11716070, at *3 (N.D. Ill. Jan. 11, 2017). Once a plaintiff shows interference with their FMLA rights, "winning relief requires the plaintiff to show prejudice, meaning harm resulting from the violation." *Warren v. Millennium Hotels & Resorts*, No. 23C1199, 2023 WL 5980012, at *3 (N.D. Ill. Sept. 14, 2023); *see also Ziccarelli*, 35 F.4th at 1088-89 (The "prejudice question is used to decide whether § 2617 provides relief for a proven violation."). So, while Plaintiff may be required to show prejudice to be entitled to a remedy, she is not required to show prejudice to state a claim for FMLA interference. *See id.* ("[A] remedy is available under § 2617 if the plaintiff can show prejudice from the violation.). Accordingly, Count IV of the SAC will not be dismissed.

### IV. Retaliation in Violation of the FMLA (Count V)

"Retaliation claims under the FMLA require that: (1) the employee engaged in statutorily protected activity; (2) the employer subjected her to an adverse action; and (3) the protected activity caused the adverse action." *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)). The first two elements are not in dispute. At issue is whether a causal connection existed between Plaintiff's protected activity and the adverse employment action. However, as discussed *supra,* Defendant's causation arguments are a nonstarter. *See Warren,* 2023 WL 5980012, at *3 ("[A] plaintiff is not required to know exactly what caused an adverse employment action prior to

discovery."). Plaintiff alleges that within a few months of taking FMLA leave to care for her grandmother and then for herself, Defendant interfered with those rights and then terminated Plaintiff. Again, the circumstances alleged, including the suspicious timing, are enough to survive a motion to dismiss. Accordingly, Count V of the SAC will not be dismissed.

## CONCLUSION

For the reasons set forth above, Advocate's Motion to Dismiss Plaintiff's Second Amended Complaint [23] is denied. Defendant must file an amended answer to Plaintiff's Second Amended Complaint [22] by January 8, 2024.

**DATED**: December 18, 2023        **ENTERED**:

_LaShonda A. Hunt_
LaShonda A. Hunt
United States District Judge